IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MARCEL SEJOUR,<br>   *Defendant.* | Criminal Action No. ELH-18-0141 |

**MEMORANDUM OPINION**

Marcel Sejour, through counsel, has filed an "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 47. The motion is supported by a memorandum of law (ECF 49) (collectively, the "Motion") and two exhibits. ECF 49-1; ECF 49-2.

The government opposes the Motion (ECF 53) and has submitted one exhibit. ECF 53-1. Defendant has replied. ECF 55

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

### I.   Background

On March 13, 2018, a grand jury in the District of Maryland issued a single-count indictment charging Sejour with one count of possession with intent to distribute 100 grams or more heroin, in violation of 21 U.S.C. § 841(a)(1). ECF 1. Pursuant to a Plea Agreement (ECF 36), Sejour entered a plea of guilty to the single-count indictment on December 18, 2018. ECF 35. The plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of imprisonment ranging between the mandatory minimum sentence of 60 months and a maximum of 72 months. ECF 36, ¶ 10.

The Plea Agreement included a stipulation of facts. *Id.* at 9. According to the agreed

facts, on September 29, 2017, Sejour was stopped on a highway by members of the Maryland Transportation Authority Police and consented to a search of his vehicle. During the vehicle search, Sejour fled from the scene on foot. *Id.*[1] He jumped the concrete barrier at the side of I-895 where his car was sitting, went over a fence, and fled onto the nearby I-95 toll plaza. *Id.* A search of the defendant's vehicle revealed a brick shaped package of approximately 992.1 grams of heroin. *Id.*

According to the Presentence Investigation Report ("PSR," ECF 39), Sejour had a base offense level of 28, based on the quantity of drugs involved. *Id.* ¶ 13. After deductions for acceptance of responsibility, pursuant to § 3E1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), Sejour had a final offense level of 26. *Id.* ¶ 21. With a criminal history score of three points, defendant had a Criminal History Category of II. *Id.* ¶ 28.

Based on an offense level of 26 and a Criminal History Category of II, Sejour's Guidelines called for a period of incarceration ranging from 70 to 87 months. *Id.* ¶ 59.

Sentencing was held on March 21, 2019. ECF 44. At the time, the defendant was 45 years old. ECF 39 at 3. Notably, defendant reported that he was in good physical health. *Id.* ¶ 44. Pursuant to the Plea Agreement, I imposed a sentence of 63 months of incarceration, with credit from September 29, 2017. ECF 44.

Sejour, who was born in Haiti in February 1973, is now 47 years of age. ECF 39. He is not a legal permanent resident of the United States. *Id.* at 2. Sejour is currently serving his sentence at McCrae CI in Georgia, a private correctional institution under contract with the Bureau of Prisons ("BOP"). To date, Sejour has served about 38 months of his sentence. This

---

[1] In a motion to suppress, defendant challenged the legality of the stop and disputed that he consented to the search. ECF 16.

equates to about 60% of the sentence, exclusive of good time credits under 18 U.S.C. § 3624(b). His projected release date, according to the BOP, is March 22, 2022. *See* ECF 49 at 2.

Notably, defendant was hospitalized in April 2020 with COVID-19 and pneumonia. ECF 49-1 (Medical Records). His symptoms included high fever and difficulty breathing. *Id.* at 2. Sejour was hospitalized, where he was put on oxygen and antibiotics. *Id.* Apparently, he has recovered and tested negative for COVID-19 in May. *Id.*

Sejour filed a request for compassionate release with the Warden on June 25, 2020. ECF 49-2 (Administrative Request). The request was denied. ECF 53-1.

The government advises that the defendant is ineligible for home confinement because of pending immigration issues. ECF 53 at 2. But, the defense asserts that the defendant, a native of Haiti, has a deferral of removal order under the Convention Against Torture. ECF 55 at 3.

Additional facts are included, *infra*.

## II.    Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030

(1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. The BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

As indicated, in resolving a compassionate release motion, a court must consider the factors in 18 U.S.C. § 3553(a). *See Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 2020 WL 6743609, at *2 (4th Cir. Nov. 17, 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). And, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction

5

based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes to the Guidelines permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns

6

Family Circumstances. Application Note 1(D) is titled "**Other Reasons.**" It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Court may not rely on the Program Statement, however. Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 820 F. App'x at 230.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.   COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130,

---

[2] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

7

461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[3]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.  *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  As of November 30, 2020, COVID-19 has infected more than 13.3 million Americans and caused over 266,000 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Nov. 30, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional

---

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW  (last accessed June 15, 2020).

circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020).  Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available. But, it appears that a vaccine is on the horizon.  Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020 and July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance.  *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a

9

compromised immune system, overweight, pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 53 at 10-11 (detailing measures that BOP has implemented at BOP facilities). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

11

As with the country as a whole, however, the virus persists in penal institutions.[4] As of November 30, 2020, the BOP had 124,994 federal inmates and 36,000 staff. And, as of today's date, the BOP reported that 4,523 inmates and 1,381 BOP staff currently tested positive for COVID-19; 19,775 inmates and 1,843 staff have recovered from the virus; and 145 inmates and two staff member have died from the virus. Moreover, the BOP has completed 80,199 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 30, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to McCrae CI, where the defendant is a prisoner, the BOP reported as of November 25, 2020, that no inmates currently test positive for COVID-19 but 20 inmates have recovered at the facility. One inmate has died. The private facility does not report the number of staff that have been infected or the number of tests it has completed. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 25, 2020).

---

[4] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19. *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?name=styln-coronavisur&region=TOP_BANNER&block=storyline_menu_recirc&action=click&pgtype=LegacyCollection&impression_id=78b44851-1885-11eb-baa7-3f68d7b814c8&variant=1_Show.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems." *America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html?referringSource=articleShare.

## IV. Discussion

Sejour moves for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19. ECF 49 at 6-12. In particular, defendant argues that he has a compromised immune system as a result of contracting COVID-19 in April 2020, so he is more susceptible to dangerous long-term consequences from the illness if he contracts it again. ECF 49 at 8. Moreover, Sejour contends that the sentencing factors under 18 U.S.C. § 3553(a) counsel in favor of reducing his sentence to time served. ECF 49 at 12-13.

The government opposes defendant's Motion at each step of the analysis. The government does not deny that defendant contracted the coronavirus and "needed serious medical treatment." ECF 53 at 14-15. However, the government contends that contracting the virus is not among the CDC risk factors and the defendant does not indicate that he is immunocompromised as a result of recovering from the coronavirus. *Id.* at 15-16. Further, the government maintains that defendant does not "establish a particularized risk at CI McCrae." *Id.* at 17. And, in any event, the government argues that Sejour remains a danger to the community and the § 3553(a) factors militate against reducing his sentence. *Id.* at 21-25.

I agree with the government that Sejour has not presented a medical condition identified by the CDC that places him at a risk for severe illness from the virus. The Court is sympathetic that Sejour had COVID-19 and required significant medical treatment. However, absent evidence of other underlying conditions that make Sejour particularly vulnerable to COVID-19, his experience in contracting the coronavirus is not grounds for compassionate release.

To be sure, numerous courts in this District have granted compassionate release or sentence reductions to individuals who have contracted, and recovered from, COVID-19. However, in those cases the defendants also suffered from other medical conditions that put them

13

at enhanced risk of suffering from severe illness from COVID-19. *See, e.g.*, *United States v. Braxton*, Crim No. JKB-09-478, 2020 WL 4748536 (D. Md. Aug. 17, 2020) (defendant suffers from multiple medical conditions); *United States v. Fletcher*, Crim. No. TDC-05-0179-01, 2020 WL 3972142 (D. Md. July 13, 2020) (defendant had Type 2 diabetes, chronic kidney disease, and hypertension); *United States v. Heyward*, Crim. No. PWG-17-527, 2020 WL 3547018 (D. Md. June 30, 2020) (defendant was 65 years old and suffered from a "myriad [of] health conditions" in addition to COVID-19, including hypertension, chronic viral hepatitis C, peripheral vascular disease); *United States v. Williams*, Crim. No. PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (defendant was obese). In contrast, in this case, defendant only presents medical conditions that may be associated with his COVID-19 diagnosis and recovery. *See* ECF 49 at 7-8; ECF 55 at 1-3. In fact, defendant reported that he was in good physical health at the time of sentencing in 2019. ECF 39, ¶ 44. And, he does not contend that he contracted any other serious conditions prior to April 2020.

Because Sejour has failed to provide an extraordinary and compelling reason for compassionate release, I need not address the relevant sentencing factors under 18 U.S.C. § 3553(a). Nevertheless, I note that a reduction of Sejour's sentence to time-served would be inconsistent with the § 3553(a) factors. Sejour has only served about 60% of his sentence. And, that sentence was below the Guidelines range and towards the bottom of the C Plea range.

In addition, as the government notes, Sejour's criminal history includes a prior federal conviction for conspiracy to distribute 5 kilograms or more of cocaine in 2002. ECF 39, ¶ 26. In that case, defendant was sentenced to 120 months' incarceration. *Id.* Yet, that federal prosecution, along with a significant sentence—longer than the one imposed in this case—did

14

not deter defendant from the commission of this offense. These facts militate against granting Sejour a reduction in his sentence.

Accordingly, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

### V. Conclusion

For the forgoing reasons, I shall deny the Motion (ECF 47), *without prejudice*.

An Order follows, consistent with this Memorandum Opinion.


Date:   November 30, 2020                              /s/
                                          Ellen Lipton Hollander
                                          United States District Judge